UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                  **Hon. Hugh B. Scott**

      v.

                   05CR344A

                   **Order**

RICHARD A. MUTO,

       Defendant.

  This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 5). The instant matter before the Court is defendant's motion for various discovery relief (Docket No. 25[1]). These will be considered in this Order.

  Defendant also has moved to suppress statements and allegedly illegally seized evidence, to exclude a Statute of Limitations Tolling Agreement, to dismiss the Indictment and for a Bill of Particulars (Docket No. 25, Def. Motion at 6-7, 5-6, 2-5, 20-21; see Docket No. 52 (supplemental motion); Docket No. 91 (defense motion to suppress items seized pursuant to a search warrant)). These motions will be considered in a separate Report & Recommendation.

BACKGROUND

  Defendant was indicted on December 13, 2005, for unlawfully and corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of I.R.C. § 7212(a), and making false and fraudulent statements in a 1998 tax return showing the

---

[1] Relevant to this portion of defendant's motion, the Government submitted in opposition its initial Response, Docket No. 28.

taxpayer's income to be well below their actual income, in violation of I.R.C. § 7206(1) (Docket No. 1, Indict. ¶¶ 3, 4-15, 16-17).  This arises from defendant's participation in a tax and investment advising business that allegedly sold and promoted "multi-layered abusive trust schemes (also known as 'common law business organizations' and 'business trusts') that he marketed on behalf of American Asset Protection ('AAP') based in Palm Beach County, Florida, and later The Aegis Company ('Aegis') based in Palos Hills, Illinois" (id. ¶ 1.e.).  The Indictment charges that defendant knew that use of multi-layered trust schemes would cause his clients to file false tax returns with the Internal Revenue Service ("IRS") (id.).  Defendant allegedly sold these trusts from 1996 to 2000 (id. ¶¶ 3, 5-14) and used the Aegis Audit Arsenal letters to avoid an IRS audit of his returns (id. ¶ 15).

Defendant was arraigned on February 16, 2006, pleading not guilty (Docket No. 8).  Defendant initially moved to dismiss the Indictment and for other relief (including suppression of evidence) (Docket No. 25).  This Court denied part of the relief sought, to strike surplusage, in an Order dated January 16, 2007 (Docket No. 32).  The motion was argued on January 9, 2007 (Docket No. 30) and on January 14, 2008 (text entry, Jan. 14, 2008), and the evidentiary hearing was scheduled (Docket No. 65).

The suppression hearing on defendant's motion to suppress was conducted on April 15 and May 30, 2008, where IRS special agent Candace Kowal and United States Department of Justice Tax Division attorney Timothy Flynn testified (Docket Nos. 79, 82, 84 (transcripts), 85 (transcripts)).  Proposed findings of fact and conclusions of law were due by July 15, 2008 (see Docket Nos. 86, 87), and the suppression portions of the motion then were deemed submitted as of July 15, 2008 (Docket No. 82).

The Court then held a further status conference, on July 22, 2008, to determine whether defendant still required the discovery relief requested in his omnibus motion and discussion of the other relief sought (Docket Nos. 90 (minutes), 25). The entire motion finally was deemed submitted on August 25, 2008.

*Defense Omnibus Motion*

Defendant moves for various discovery and disclosure relief. He moves for an Order to identify government informants (Docket No. 25, Def. Motion at 8-9). He seeks production, under Federal Rule of Criminal Procedure 16, of various records (id. at 9-11). He wants produced Brady materials (id. at 11-14), Jencks Act materials (id. at 15-16), and evidence pursuant to Federal Rules of Evidence 404(b), 608, and 609 (id. at 14-15). Defendant seeks preservation of agents' rough notes (id. at 16). Defense counsel wants to participate in voir dire and to conduct voir dire of Government experts (id. at 16-17, 18-20). Defendant seeks production of Government summaries (id. at 17-18). He moves for an audibility hearing for any tapes the Government intends to introduce at trial (id. at 20). He moves to bar introduction of any handwriting opinion testimony at trial (id. at 21-25) and to bar any "expert" fingerprint testimony at trial (id. at 25).

DISCUSSION

Defendant's Discovery Motion

As noted by defendant's present counsel and the Government during the July 22, 2008, status conference, much of defendant's motions are better addressed by the Court with plenary jurisdiction either in its pretrial Order or during the course of the trial. Other issues have been

resolved by the passage of time and thus rendered moot. This Order considers the issues that remain for resolution.

Defendant seeks various items of pretrial discovery. Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

I.   Identity of Informants

Defendant first seeks the pre-trial disclosure of the identity of any informants in this case (Docket No. 25, Def. Motion at 8-9). The Government responds that it does not intend to use evidence or information from informants in its case and that it may rely upon undercover IRS agent's testimony that it would disclose pursuant to an appropriate Order (Docket No. 28, Gov't Response at 25-26).

The Government is not required to furnish the identities of informants unless it is essential to the defense. Raver v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988). Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial. United States v. Bejaia, 904 F.2d 137, 139 (2d. Cir.) cert. denied, 498 U.S. 921 (1990).

Defendant has not established that the pre-trial disclosure of the identities of any informants is essential to his defense. This request is **denied**.

II.  Brady Material

Defendant has requested that the Government disclose all materials potentially favorable to each of them, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny (Docket No. 25, Def. Motion at 11-14).  At the initial argument on January 9, 2007, defendant indicated that he wanted early production of this material (cf. Docket No. 30).  Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment.  Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness."  United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

The defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which he seeks to obtain.  The Government's written response is that it has produced in its "open files" discovery everything it believes defendant would view as Brady material and, should other material come to the Government's attention, it will produce under its continuing disclosure obligations (Docket No. 28, Gov't Response at 29-30).   Such formal disclosure of Giglio materials, however, should be after the disclosure of trial witness lists (id. at 31), as prior disclosure would be premature (id. at 30).

The instant case appears to be more complex than the average case since it involves tax schemes and multiple tax payers advised by defendant or Aegis.  Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with

5

the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) **is sufficient** in this case.

III.     Rule 404, 608 and 609 Evidence

Defendant requests disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b) (Docket No. 25, Def. Motion at 14-15).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." The Government has represented that it does not object to producing Rule 404 materials and provided notice of the categories of evidence it intends to introduce under that rule (Docket No. 28, Gov't Response at 31-34). This **is sufficient** in this case.

IV.     Preservation of Evidence

Defendant also has requested preservation of rough notes and other evidence taken by law enforcement agents involved (Docket No. 25, Def. Motion at 16). The Government states that it has informed its agents to preserve their notes (even materials beyond the scope of Brady, the Jencks Act, or Giglio) and defendant's motion is now moot (Docket No. 28, Gov't Response at 36). As a result, defendant's motion here is **moot**.

V.     Disclosure of Jencks Material

Defendant seeks immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500 (Docket No. 25, Def. Motion at 15-16). The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial. In this case, the Government has agreed to disclose this information after filing witness lists (Docket No. 28, Gov't Response at 34). Defendant thus **has not established** that prior disclosure of Jencks Act material any earlier than when the Government proposes to provide it is essential to the preparation of a defense in this case.

VI.    Other Discovery

    A.     Documents and Tangible Objects

Defendant also seeks production of various documents, books, records, photographs, and other tangible objects in the possession, custody or control of the Government (Docket No. 25, Def. Motion at 9-11), in particular millions of pages of documents that have not been received by defendant and the search warrant application affidavit (<u>id.</u> at 10). At oral argument in January 2007, defense counsel stated that 1.5 to 2 million pages of documents are involved, some copied onto CD disks, with documents produced in Buffalo (termed by the Government to be the "heart of the case"), while other boxes of documents were in Chicago, Illinois, and West Palm Beach, Florida. It is not disclosed where these boxes are now (<u>see</u> Docket No. 26, Def. Motion for Extension of Time, at 4; Docket No. 27, Gov't Response to Defense Motion for Extension of Time, Attach. A). In part, the sheer volume and dispersion of these documents justified an lengthy extension of this case (<u>see</u> Docket No. 32).

The Government's response to these specific requests is that the Government has made available these materials to defendant for his inspection and review and his motion is thus moot (Docket No. 28, Gov't Response at 26-29). But the millions of pages of documents in this case are stored in three locations across the country, as much of this material was part of other investigations (see id. at 27). The Government furnished to former counsel in February 2006 CDs containing copies of excerpts of these documents (id., Ex. C). The issue is whether inspection and review is sufficient or whether the Government is obliged to furnish a copy of these materials to defendant. During the July 22, 2008, status conference, defense counsel conceded that the materials are available from the Government with no objection to their volume or organization. Thus, the Government's production is **deemed sufficient**.

      B.      Expert Materials and Expert Testimony

           1.      Disclosure of Expert Materials

Pursuant to Rule 16(a)(1)(E), defendant seeks a written summary of any expert testimony that the Government intends to use in its direct case, along with the expert's qualifications, and the basis for the expert's opinion, whether or not the expert files a report (Docket No. 25, Def. Motion at 10).

The Government stated in its response that it intends to disclose expert information but that it had not decided at that juncture whether it intended to call expert witnesses (Docket No. 28, Gov't Response at 28).

Rule 16(a)(1)(E) provides that, upon defendant's request, the Government must furnish for inspection or copying books, papers, data, and like items "if the item is within the [G]overnment's possession, custody, or control and . . . (ii) the [G]overnment intends to use the

item in its case-in-chief at trial," Fed. R. Cr. P. 16(a)(1)(E)(ii).  Here, the Government has not yet decided whether it intends to use experts and has not updated its submission to indicate its intention.  Once the Government makes that decision, it should make the necessary disclosure.  If it has not decided (or produced expert disclosure) before the final pretrial conference before the District Judge, the Court then could order the timing for such disclosure.

This request is **denied without prejudice** to be renewed once the Government declares its intention to use experts.

2.      Bar Government's Expert Testimony

Defendant next seeks to bar Government testimony regarding handwriting experts (Docket No. 25, Def. Motion at 21-25), and fingerprint experts (id. at 25).  The Government states that it does not intend to call a handwriting or fingerprint expert, thus deeming this motion moot (Docket No. 28, Gov't Response at 41).  Defendant's motion is thus **moot**.

C.      Government Summaries

Defendant seeks production of the Government's summaries pursuant to Federal Rue of Evidence 1006 (Docket No. 25, Def. Motion at 17-18).  The Government states that it does not oppose this motion, noting that the only summary exhibits it intends to offer are summaries of defendant's bank records, with the original records available for inspection and review (Docket No. 28, Gov't Response at 37-38).  As for pedagogical devices and visual aids the Government may intend to use, the Government offers to provide its demonstrative exhibits in a timely manner (id. at 38).  The Government's offers are sufficient here.  The schedule for inspection of these items ought to be set by the District Judge in his final pretrial Order.

    D.    Audibility Hearing

Defendant next seeks an audibility hearing to determine whether any tapes the Government intends to introduce at trial are audible (Docket No. 25, Def. Motion at 20). The Government intends to introduce audio tapes (conversations between defendant and an undercover IRS agent) and videotapes (a segment of the ABC News show <u>20/20</u> showed by defendant to prospective clients) (Docket No. 28, Gov't Response at 39). Defendant was provided with the transcripts of the audio tape at his arraignment and the audio tape was available for defense counsel to hear since February 2006 but defense counsel had not sought to hear it as of when the Government first responded to the motion (<u>id.</u>) and when the motion was initially argued (<u>see</u> Docket No. 30, minutes from Jan. 9, 2007, argument). Since defendant had not heard the tapes or identified the portions that may be inaudible, the Government objects to an audibility hearing because defendant has not met its burden and that such a hearing would be a waste of time (Docket No. 28, Gov't Response at 39).

At the July 22, 2008, status conference, defendant did not assert the necessity for an audibility hearing. This motion is **denied without prejudice** to be renewed at trial should a particular recording come under question.

VII.    <u>Voir Dire</u> and Other Trial Court Motions

Defendant next moves for various relief best considered by the District Judge with plenary jurisdiction over this case, such as how <u>voir dire</u> would be conducted (<u>see</u> Docket No. 25, Def. Motion at 16-17) and <u>voir dire</u> of Government experts outside of the presence of the jury (<u>see</u> <u>id.</u> at 18-20). Rulings on these portions of the motion are **deferred** to Chief Judge Arcara.

CONCLUSION

For the reasons stated above, defendant's omnibus motion (Docket No. 25) is **granted in part, denied in part, or deemed moot (regarding the motion to preserve agents' notes or bar certain experts' testimony)**, as discussed above.  Other relief is deferred to the final pretrial Order of Chief Judge Arcara.

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated:   Buffalo, New York
          September 23, 2008