```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

UNITED STATES OF AMERICA,

                                  **Hon. Hugh B. Scott**

v.

                                  05CR344A

                                  **Report**
RICHARD A. MUTO,                       **&**
                                  **Recommendation**

                Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 5). The instant matter before the Court is defendant's remanded motion to suppress statements and allegedly illegally seized evidence and to exclude a Statute of Limitations Tolling Agreement ("tolling agreement") (Docket No. 25[1], Def. Motion at 6-7, 5-6; see Docket No. 52 (supplemental motion); Docket No. 105, Order of Jan. 20, 2009, remanding this matter), and the Government's motion for reconsideration (Docket No. 107[2]). This Court rendered a Report & Recommendation (Docket No. 94), which both defendant (Docket No. 98) and the Government

---

[1]In support of this motion is defendant's post-hearing memorandum of law, Docket No. 87, and his second motion to suppress items seized pursuant to the search warrant, Docket No. 91.
     In opposition, the Government submitted its initial Response, Docket No. 28; its response to defendant's Supplemental Motion (with attached exhibit), Docket No. 54; its proposed findings of fact and conclusions of law (with exhibits), Docket No. 86, and the Government's response to the motion to suppress items seized pursuant to the search warrant, Docket No. 92.

[2]In support of this motion is the Government's motion, Docket No. 107, as well as its prior moving or objection papers. In opposition, defendant submits (in addition to his earlier moving papers and objections) his response, Docket No. 109.

(Docket No. 100) separately objected to. Chief Judge Arcara adopted in part and remanded for further or amended findings based upon an incorrect recitation of the facts in that Report (Docket No. 105, Order at 4). Familiarity with that Report and that Order is presumed.

Upon this remand, the Court held a status conference on January 27, 2009 (text entry, filed Jan. 27, 2009). The Government was given until February 25, 2009, to file supplemental briefing on the issues of the custodial nature of the August 2005 interview and its impact on the tolling agreement executed, which it filed in its motion for reconsideration (Docket No. 107). Defendant was given until March 16, 2009, to respond (text entry, Jan. 27, 2009), which he did (Docket No. 109). The motion for reconsideration was argued on June 8, 2009 (Docket No. 110).

## BACKGROUND

Defendant was indicted on December 13, 2005, for unlawfully and corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, in violation of I.R.C. § 7212(a), and making false and fraudulent statements in a tax return showing the taxpayer's income to be well below their actual income, in violation of I.R.C. § 7206(1) (Docket No. 1, Indict. ¶¶ 3, 4-15, 16-17).

Defendant's motion to suppress initially was argued on January 9, 2007 (Docket No. 30), and on January 14, 2008 (text entry, Jan. 14, 2008). A suppression hearing was conducted on April 15 and May 30, 2008, where IRS special agent Candace Kowal ("Kowal") and Justice Department Tax Division attorney Thomas Flynn ("Flynn") testified (Docket Nos. 79, 82, 84, 85). Proposed findings of fact and conclusions of law were due by July 15, 2008, and the motion then was deemed submitted as of July 15, 2008 (Docket No. 82). The Court then held a further

status conference, on July 22, 2008 (Docket No. 90 (minutes); see Docket No. 25 (motion)), and ordered that defendant's further submission on this probable cause issue were due by August 15, 2008, with the Government's response due by August 25, 2008, and all motions were deemed submitted as of August 25, 2008 (see Docket No. 90).

*Suppression Hearing*

The hearing involved defendant's interview with Kowal and Flynn while defendant was incarcerated at the Adirondack Correctional Facility in August 11, 2005. There was no prior notice of the visit, despite Department of Correctional Services policy requiring such notice (Docket No. 84, Apr. 15, 2008, Tr. at 39-40, 48-49 (Kowal); Docket No. 87, Def. Memo. at 2). Corrections officers notified defendant that he had an unnamed visitor (Docket No. 84, Apr. Tr. at 45 (Kowal); Docket No. 87, Def. Memo. at 2). During the interview, defendant executed the tolling agreement, extending by ninety days the statute of limitations for prosecuting possible federal charges against him.

The Government objected to the findings in the original Report (cf. Docket No. 94, R&R at 4, 8, 9) regarding the nature of the rights defendant was advised of during that August 2005 interview (Docket No. 100, Gov't Objections at 7-9; see Docket No. 107, Gov't Motion for Reconsideration, at 8-9). While defendant was not given formal Miranda warnings (Docket No. 85, May 30, 2008, Tr. at 14, 15-16 (Flynn); Docket No. 87, Def. Memo. at 2, 3) or advised of his "custodial rights" (such as that he could remain silent or that he had the right to have an attorney present during the questioning), defendant was given what Kowal termed "non-custodial rights," an advisement of his right against self-incrimination even though he was not in custody, rights that Kowal read from an IRS form (Docket No. 84, Apr. Tr. at 93-94 (Kowal)). Defendant

3

was told that he need not talk with these agents, that he could terminate the interview at any time, and that he had a right to have an attorney present during the interview (Docket No. 105, Order at 3; Docket No. 100, Gov't Objections at 5-6, 8-9; Docket No. 84, Apr. Tr. at 73-75, 76 (Kowal); Docket No. 85, May Tr. at 18-20, 14-15 (Flynn)).

Defendant was told by Kowal and Flynn that there was an ongoing investigation into Aegis and that he was a target of the grand jury (Docket No. 85, May Tr. at 11 (Flynn); Docket No. 87, Def. Memo. at 2). Defendant stated that he could not afford an attorney and that Kowal and Flynn indicated that they would look into the procedure in this District for obtaining appointed counsel (Docket No. 85, May Tr. at 14-15 (Flynn); Docket No. 87, Def. Memo. at 3). Defendant then asked how he could avoid being indicted, raising concerns about the effect an Indictment would have on his then-pending parole hearing, and noted his concern about his family's well-being (Docket No. 84, Apr. Tr. at 105-06 (Kowal); Docket No. 87, Def. Memo. at 4). Defendant's parole hearing was scheduled during the proposed tolling period; had defendant not signed he may have been indicted when he appeared before the parole board (see Docket No. 84, Apr. Tr. at 84-85 (Kowal)). Flynn stated that if Muto signed the tolling agreement, defendant would get more time to provide the Department of Justice or the IRS with reasons why he should not be charged (Docket No. 84, Apr. Tr. at 81-82 (Kowal); Docket No. 87, Def. Memo. at 4). After one and a half hours of this interview, defendant read the tolling agreement and signed it. According to Kowal, defendant signed it because he wanted to cooperate and he needed time to get an attorney for this matter (Docket No. 84, Apr. Tr. at 82-83 (Kowal); Docket No. 87, Def. Memo. at 5).

On August 24, 2005, the defendant wrote to Kowal stating that he still did not have counsel and was still looking, but was advised not to talk with the IRS until he has obtained counsel (Docket No. 84, Apr. Tr. at 88, Gov't Ex. 7 (Kowal); Docket No. 87, Def. Memo. at 5).

*Report & Recommendation, Objections, and Chief Judge's Order*

The Report & Recommendation following the suppression hearing recommended suppression of defendant's statements due to a lack of Miranda-like warnings being given to defendant, rendering his interview custodial (Docket No. 94, R&R at 6-9), but recommended denial of suppression of the tolling agreement defendant executed at the end of the interview (id. at 14-17), and denial of suppression of evidence pursuant to the search warrant (id. at 9-14). The Report also denied defendant's motion for a Bill of Particulars (id. at 19-20) and recommended denying defendant's motion to dismiss the Indictment (id. at 17-19).

Both defendant (Docket No. 98) and the Government (Docket No. 100) filed their respective objections to this Report. Chief Judge Arcara heard argument on these objections and adopted (in part) the Report and remanded on the initial issue of whether defendant was advised of his rights prior to the Government's questioning and whether that questioning was in a custodial setting (Docket No. 105, Order at 2-4). The remand was for clarified or amended factual findings and to "determine whether suppression is warranted under those amended facts" (id. at 4). The Court then deferred ruling on defendant's motion to suppress the tolling agreement pending resolution of the custodial nature of defendant's interview (id.).

5

## DISCUSSION

I.       Suppression of Defendant's Statements

Defendant moved to suppress statements given while he claims to have been in a custodial interview at the Adirondack Correctional Facility in August 2005 (Docket No. 25, Def. Motion at 6-7; Docket No. 52, Def. Supp'al Motion).  He argues that he was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), or that he had the right to remain silent and have counsel present when the IRS agents talked with him, Mathis v. United States, 391 U.S. 1 (1968).  Thus, he argues that all of his statements from that interview should be suppressed, including his execution of the statute of limitations tolling agreement (Docket No. 25, Def. Motion at 6; Docket No. 52, Def. Supp'al Motion, Def. Atty. Aff. ¶¶ 9-13; Docket No. 87, Def. Memo. at 5-6).  Defendant argues that his case is similar to Mathis, in which the Supreme Court held that an inmate must be given Miranda warnings before being questioned (Docket No. 87, Def. Memo. at 5-6).  He contends that the Government bears a heavy burden to show that he knew his rights and understood them, see United States v. Codrington, No. 07MJ118, 2008 U.S. Dist. LEXIS 35859, at *14 (E.D.N.Y. May 1, 2008) (Pollak, Mag. J.) (id. at 7).

A.       Scope of Miranda Warnings Required in this Circumstance

As previously noted (Docket No. 94, R&R at 6-8), the mere fact that an interview subject is incarcerated does not render his questioning "custodial" for Miranda purposes.  As the Government argued (Docket No. 86, Gov't Findings of Facts, Proposed Conclusions of Law ¶ 4; Docket No. 28, Gov't Response at 22-24), the inmate subject of interrogation (like defendant was in August 2005) must also face additional coercion beyond the conditions of his confinement to make the questioning "coercive" in order to invoke the requirement of advising the inmate of his

or her Miranda warnings, see United States v. Willoughby, 860 F.2d 15, 23-24 (2d Cir. 1988), cert. denied, 488 U.S. 1033 (1989). The Second Circuit in Willoughby believed "that the mere fact of imprisonment does not mean that all of a prisoner's conversations are official interrogations that must be preceded by Miranda," 860 F.2d at 23 (citing Mathis, supra, 391 U.S. at 4-5). That court applied Miranda within this prison context where there was "any measure of compulsion above and beyond that confinement," id. at 24. The court noted that "Miranda warnings are required prior to official interrogation of a person who 'has been taken into custody or otherwise deprived of his freedom of action in any significant way,'" id. at 23 (quoting Miranda, supra, 384 U.S. at 444).

In Mathis, defendant was convicted of filing false claims against the Government. Part of the evidence rested on statements and documents from defendant obtained by revenue agents while he was in state prison. 391 U.S. at 2-3. Defendant was not warned that he had the right to remain silent or the right to the presence of counsel, id. at 3. The Court rejected arguments that defendant was not under custodial interrogation because his incarceration was by another jurisdiction from the questioners, id. at 4, 5; see Beckwith v. United States, 425 U.S. 341, 347 (1976) (Mathis grounded on the custodial aspects of defendant's questioning). The Court reaffirmed Miranda's requirement that a person be warned of his right to remain silent and his right to counsel, Mathis, supra, 391 U.S. at 5.

> In a later case, the Supreme Court
>
> "reject[ed] the argument that Miranda warnings are required whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent. Questioning by captors, who appear to control the suspect's fate, may create mutually reinforcing pressures that the Court has assumed will

7

weaken the suspect's will, but where a suspect does not know that he is conversing with a government agent, these pressures do not exist,"

Illinois v. Perkins, 496 U.S. 292, 297 (1990). Even in a noncustodial interrogation setting, special circumstances may be such where the behavior of law enforcement officials "was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined," Beckwith, supra, 425 U.S. at 347-48 (quoting Rogers v. Richmond, 365 U.S. 534, 544 (1961)), with the issue then being whether the questioning was in fact coercive, Beckwith, supra, 425 U.S. at 348.

As noted by the Seventh Circuit in Menzer, United States v. Menzer, 29 F.3d 1223, 1231 (7th Cir. 1994), the Mathis Court "did not expressly address the question of whether imprisonment per se constitutes being 'in custody' for purposes of Miranda," see id. at 1232 n.7 (noting that the Supreme Court had declined to address this issue in a subsequent case, Bradley v. Ohio, 497 U.S. 1011, 1012, 1013 (1990) (Marshall, J., dissenting from denial of certiorari)). Citing other circuit case law (including Willoughby), the Menzer court applied the "totality of the circumstances" to determine whether inmate interrogations were custodial for Miranda purposes, describing several factors to consider in making that determination (such as defendant's freedom to leave the scene; the purpose, place, and duration of the interrogation; a change in defendant's surroundings that add imposition on his freedom of movement), id. at 1232 (quoting Leviston v. Black, 843 F.2d 302, 304 (8th Cir.), cert. denied, 488 U.S. 865 (1988); United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1985), cert. denied, 479 U.S. 830 (1986)), 1232-33, and "circumstances that suggested any measure of compulsion above and beyond that confinement," Willoughby, supra, 860 F.2d at 24; see Menzer, supra, 29 F.3d at 1232.

The Second Circuit found other instances of prisoner questioning which were held not to constitute custodial interrogation requiring Miranda warnings, Willoughby, supra, 860 F.2d at 23-24. But these examples involve questioning by or conversations with civilians or government employees who were not law enforcement agents or interrogators, id., discussing United States v. Morales, 834 F.2d 35, 37-38 (2d Cir. 1987)[3]; United States v. Conley, 779 F.2d 970, 972-73 (4th Cir. 1985)[4], cert. denied, 479 U.S. 830 (1986); Flittie v. Solem, 751 F.2d 967, 974 & n.11 (8th Cir. 1985)[5], cert. denied, 475 U.S. 1025 (1986); see also Willoughby, supra, 860 F.2d at 17 (visitor with concealed government recording device); Perkins, supra, 496 U.S. at 294-95, 297 (undercover agent questioned defendant), id. at 300 (Brennan, J., concurring in the judgment) (questioning when suspect does not know that his questioner is police agent is not "interrogation" in an "inherently coercive" environment).

Quoting a later Supreme Court decision, the Second Circuit in Willoughby held that Miranda only should apply when "a [given curtailment of freedom of action] exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights," 860 F.2d at 23 (quoting Berkemer v. McCarty, 468 U.S. 420, 437 (1984)); see also Menzer, supra, 29 F.3d at 1230-33. The Second Circuit noted that the inmate questioned in that case, Arthur Prioleau, while a prisoner had sought the visitor to see him and the Government had not initiated the conversation. He could have terminated the interview and he was not compelled to conduct the interview. The

---

[3] Prison medical assistant questioned defendant.

[4] Prison guard questioned defendant.

[5] Informant visitor questioned defendant.

9

Second Circuit concluded that no Fifth Amendment violation had occurred in not advising him of those rights during that conversation. Willoughby, supra, 860 F.2d at 24.

The initial Report & Recommendation found that the issue was whether additional compulsion (to make the interview custodial) arose. This, in turn, depended upon whether defendant was aware of his rights, that is, whether he was advised that he could terminate the conference and that he had the right to the presence of an attorney during the conference. That Report found that he was not advised of those rights as the agents proceeded to question him. (Docket No. 94, Report at 7-9.) This finding has been reconsidered following the Chief Judge's remand.

      B.      Coercive Nature of Defendant's Questioning

In this case, the Government contends that agent Kowal and Flynn advised defendant that he could consult with counsel at any time during the interview, that he could stop the interview at any time. The agents testified that defendant said that he understood those rights and proceeded to talk with Flynn and Kowal (see Docket No. 100, Gov't Objections at 6, Gov't Ex. 3; Docket No. 84, Apr. Tr. at 73-76 (Kowal); Docket No. 85, May Tr. at 14-15, 20 (Flynn)). Further, the Government introduced portions of the Adirondack Correctional Facility Inmate Orientation Handbook that stated that "no inmate is to be visited against his will by any person, including attorneys, their duly authorized representatives . . . ," (Docket No. 100, Gov't Objections, Gov't Ex. 11, Handbook at 16 (revised 2005)).

The evidentiary hearing was conducted to determine whether defendant's situation (while in state incarceration) was sufficiently coercive when he made statements to Kowal and Flynn to require Miranda-like warnings (see Docket No. 84, Tr. of Apr. 15, 2008, hearing). The fact that

defendant was incarcerated does not end the inquiry; incarceration on an unrelated charge alone is not custody to require Miranda warnings but the conduct of interviews may become sufficiently coercive beyond that incarceration so as to mandate such warnings. Unlike Willoughby and the cases cited by the Government in support of not requiring an advisement of rights to an inmate being questioned (see Docket No. 104, Gov't Objections at 7-8), here the interviewers were Government agents uninvited by defendant. While there is added compulsion when a law enforcement officer questions an inmate rather than a civilian or even a prison officer (not questioning about criminal activity or violations of prison rules), cf. Willoughby, supra, 860 F.2d at 18, 24, these Government agents did advise defendant of his rights to terminate that interview at any time or to have counsel present during it.

Defendant could have refused the visitors or terminated the visit. Defendant was aware of the need for counsel (later writing to the Government agents that he could no longer communicate with them without counsel); he stated during the interview that he could not afford one and the interviewing agents only made suggestions that they would inquire into the process for appointment of counsel without concluding the interview until counsel was present.

Upon reconsideration and upon consideration of the totality of the circumstances herein, the Court finds that defendant was **not** in an additional coercive situation so as to require being advised of full Miranda rights. There were no additional pressures upon defendant (aside from his incarceration and the consequences of that status, such as his then-pending parole hearing) that the federal agents invoked to compel him to talk with them. The questioning was conducted in the visitors center at the Adirondack Correctional Facility. Defendant was free to conclude the session and leave the room where it was held; he was not removed to another space and he did

11

not have his freedom of movement further restrained. The interview lasted for an hour and a half before defendant read and signed the tolling agreement, not an overbearing amount of time. He was informed (both by the agents and by the rules of the correctional facility) that he could terminate the interview with those agents at any time but defendant continued to speak with Kowal and Flynn despite not having counsel present or the apparent means to obtain counsel. He was told what one agent termed his "non-custodial rights" against self-incrimination and his right to counsel (see Docket No. 84, Apr. Tr. at 93 (Kowal)). Thus, defendant's motion to suppress (Docket Nos. 25, 52) his statements should be **denied**.

For a complete record, the Court next considers defendant's motion to exclude his tolling agreement.

II. Motion to Exclude Tolling Agreement

Defendant next seeks to exclude his tolling agreement that he signed while in Adirondack Correctional Facility during his interview with Kowal and Flynn (Docket No. 52, Def. Supp'al Motion, Def. Atty. Aff. ¶¶ 4-6). That tolling agreement excluded August 11, 2005, to November 10, 2005, from the applicable limitations period (id. ¶¶ 6, 16; Docket No. 28, Ex. E; Docket No. 86, Gov't Proposed Findings of Fact, Ex. 6). Defendant contends that he did not enter into that agreement knowingly, voluntarily, and intelligently (Docket No. 52, Def. Supp'al Motion, Def. Atty. Aff. ¶ 8). As a result, defendant concludes that the tolling agreement is void and Indictment on Count II would be time barred (id. ¶¶ 14, 15-18) and that Count I did not allege any activity that would have been preserved by a proper tolling agreement (id. ¶¶ 19-21). According to defendant, by its own terms, the tolling agreement time barred Count II as of

November 10, 2005, and did not enlarge the Government's time to December 13, 2005, when defendant was indicted (id. ¶ 17).

The Government counters that defendant knowingly, intelligently and voluntarily entered into the tolling agreement (Docket No. 28, Gov't Response at 5) and that the agreement is valid and enforceable (Docket No. 86, Gov't Findings of Fact, Proposed Conclusions of Law ¶¶ 7-17, 19). Absent the tolling agreement, the statute of limitations period would have run from September 22, 1999, to September 22, 2005 (id. ¶ 14). The tolling agreement excludes three months, from August 11, 2005, to November 10, 2005, and that the limitations period resumed running on November 10, 2005 (id. ¶ 15), and the December 13, 2005, Indictment is thus timely (id. ¶ 17). The Government counters that defendant's personal or family circumstances that may have pressured him to avoid an immediate Indictment was irrelevant to the tolling agreement (id. ¶ 19).

The initial Report & Recommendation recommended denying suppression of this tolling agreement (Docket No. 94, R&R at 14-19) but Chief Judge Arcara deferred ruling on defense objections pending amended fact finding (discussed above) regarding the custodial nature of the interview (Docket No. 105, Order at 4). Given the present recommendation that defendant was not in a sufficiently coercive state to require Miranda warnings, this Court next considers the exclusion of the tolling agreement.

  A.  Effect of Tolling Agreement

From the suppression hearing, the Court finds that the tolling agreement, in relevant provision, states that

> "Therefore, it is hereby stipulated and agreed, between plaintiff United States of America, and Richard Muto, individually, that the period beginning August 11, 2005 and ending November 10, 2005, shall be tolled and excluded from any calculation of time for the purposes of (a) any applicable statute of limitations under the laws of the United States, and (b) any constitutional, statutory or other claim concerning pre-indictment delay, with respect to offenses for which the statute of limitations would expire between August 11, 2005 and November 10, 2005 and which relate in any way to allegations of tax evasion, filing false tax returns, aiding in the preparation of false tax returns, conspiracy to impede the IRS, attempts to interfere with the administration of the IRS, and making false statements on any tax returns by Richard Muto."

(E.g., Docket No. 86, Ex. 6). By its terms, the agreement carves out 90 days (between August 11, 2005, and November 10, 2005) from the limitations period, restarting the limitations period on November 10, 2005. Thus, for Count II, with the last activity occurring on September 22, 1999, the last day for a timely Indictment absent this tolling agreement would have been September 22, 2005; with the agreement, the period stopped on August 11, 2005, and then resumed on November 10, 2005, to run for 42 more days (or the difference between August 11 and September 22), until December 22, 2005. As so construed, Count II of the December 13, 2005, Indictment is **timely**. Defendant in his objections does not challenge this finding (cf. Docket No. 87, Def. Objections).

B. Waiver

The next issue is whether defendant made a voluntary, knowing, and intelligent waiver of his right under the statute of limitation in signing the tolling agreement. This differs from the Miranda rights issue previously discussed regarding suppression of defendant's statements. Execution of the tolling agreement alone does not provide incriminating statements that Miranda is supposed to warn the suspect about. Whether defendant knowingly, voluntarily, and intelligently waived his rights is more of a Fifth Amendment Due Process Clause concern rather

14

than a Self-Incrimination Clause concern. That waiver also may implicate the right to counsel under the Sixth Amendment, that is, if advised by counsel, would defendant have knowingly, voluntarily or intelligently waived his defense under the statute of limitations. But the right to counsel under the Sixth Amendment does not attach until adversary proceedings against the defendant are commenced, see United States v. Gouveia, 467 U.S. 180 (1984), at a critical stage of the prosecution. In this case, the tolling agreement at issue dictated when those charges could be filed and itself was not a critical stage to have defendant's Sixth Amendment right to counsel attach.

From the record produced at the suppression hearing, the Court finds that defendant made a voluntary, knowing, and intelligent waiver when he executed the tolling agreement. Defendant read the tolling agreement and weighed the option of signing it or not, especially within the context of his then pending parole hearing. In order to not jeopardize his parole status by a possible Indictment, defendant agreed to sign the tolling agreement. Thus, defendant knowingly and intelligently signed the agreement. The circumstances here show voluntariness in that the Government agents did not coerce him into signing the agreement. It was defendant's own circumstances, his parole status and early release from his state sentence being dependent upon him not being under indictment when his parole hearing was conducted, that may have compelled his signing the tolling agreement.

Thus, defendant's motion to exclude the tolling agreement should be **denied**.

## CONCLUSION

Based upon the above, it is recommended that the Government's motion for reconsideration (Docket No. 107) be **granted**; that defendant's motions (Docket Nos. 25, 52) to

15

suppress his statements be **denied**; and that defendant's motion to exclude the Statute of Limitations Tolling Agreement is **denied** and Count II of the Indictment in this case against defendant should be deemed **timely** under the terms of that Tolling Agreement.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b)(2) and W.D.N.Y. Local Criminal Rule 58.2(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
June 26, 2009